Good morning, Sandra Lopez on behalf of Mr. Quinonez-Martinez. Mr. Quinonez-Martinez's conviction must be reversed because it was based solely on his prior admissions of alienage without any evidence of the truthfulness of those admissions or independent evidence regarding aliens. Moreover, the government failed to establish under the Taylor analysis that the prior conviction of robbery constituted a crime of violence under 2L1.2b. First, in regards to the element of alienage, the government relied exclusively on admissions made by Mr. Quinonez-Martinez to prove this element, but failed to provide any evidence regarding the truthfulness of those prior admissions. It's true that the government did present admissions made after his arrest and during an immigration judge's hearing, but there was no information of truthfulness regarding why those statements were reliable. There was no evidence that at the administrative hearing, Mr. Quinonez-Martinez was consulted by an attorney or that an attorney was present. He could have been just answering either in the affirmative or the negative to the questions presented by the immigration judge. It could have been like many times in immigration hearings. It's a group questioning. We're not aware of the circumstances. Let me shift gears for a second. Does he have a prior conviction for robbery in California? He does, Your Honor. What's the story with that? Well, based on the conviction documents presented by the government, it's just that it was second degree. And so our argument... Third degree or robbery? I mean, sorry, I apologize, robbery. And the argument is that it's not categorically a crime of violence under 2L1.2. I understand there's several unpublished opinions in this Court stating that it is categorically a crime of violence. But those cases rely on an error by saying that it's a per se crime of violence, which it is. But still, Taylor requires us to go further and determine whether robbery, in fact, falls under the generic definition. And, two, the cases have relied on McDarty, which actually applied to a different section of the guidelines 4B1.2, which has a much general scope of what is a crime of violence. It's our argument that although it is a crime of violence, it doesn't fit under the generic definition of a crime of violence. The statute in the United States, the Penal Code, requires that there be an immediate harm or injury to the person. California, however, is much broader than that and allows for an injury to property. That in and of itself shows that California statute is much broader than most of the statutes in the state and the Penal Code. The Fifth Circuit passed upon whether California 211 is a crime of violence. There is an unpublished decision. I thought it was published. The Fifth Circuit. Oh, right. Santiaz-Delan. Santiaz-Delan didn't talk about California robbery. It talked about Texas. I'm talking about Tejas Martinez. Right. I thought Tejas Martinez was unpublished. It's published. I could be wrong. Okay. Tejas Martinez, however, in reading it, it appears that it took the same understanding as McDoherty. It implicitly said that California robbery, although it can involve property, it inherently is a danger to the person. That's not what the statute says. Moreover, inherently dangerous would qualify under the definition of crime of violence under 4B.1.2. But it wouldn't fall under the definition of crime of violence, the case law provision of crime of violence under 2B.1.2. I see I'm almost running out of time. You're welcome to reserve it if you'd like. Thank you, Ms. Lopez. Good morning. Good morning. May it please the Court. My name is Stephen Tokars, and I represent Diapoli, United States of America. Your Honors, we are requesting that the Court affirm the conviction and sentence in this case because the appellant, Mr. Quinonez, did receive a fair trial and an appropriate sentence in the district court. Addressing first the contention regarding the alienage and the sufficiency of the evidence, we'd just like to remind the Court that although the standard of review is de novo, the test to be applied is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could in fact have the potential elements of the crime beyond a reasonable doubt. In this case, the government introduced five separate categories of evidence to support that alienage finding. And the record clearly shows that this evidence all is pointed in the same direction. Mr. Quinonez was in fact an alien, a citizen of Mexico. The first group of evidence was, of course, the circumstances of his arrest. And, Judge Silverman, you've discussed some of those circumstances. Those circumstances support a jury inference that the defendant was in fact illegally in the country and that he was in fact trying to evade detection at that time. Also, we introduced the field admissions. Those are the admissions that Mr. Quinonez first made to the Board of Poll Agents. He did first lie and say that he was in the United States as a U.S. citizen working on the road. But then he did, just a couple minutes later, admit that he was a Mexican citizen with no documents to be in the United States. Another class of statements were the post-Miranda admissions that were videotaped. And the videotape was played at trial for the jury, and the transcript was introduced into evidence. And in that videotaped admission, he did again admit that he was a citizen of Mexico. The fourth class of statements were the prior immigration hearing statements. Those were made by stipulation at trial, entered into evidence by stipulation by both parties, that Mr. Quinonez had in fact admitted under oath, subject to penalty of perjury, that he was a citizen of Mexico at the prior immigration hearing in 2006. The fifth class of evidence was the AFILE documents. Those documents included the order of the immigration judge ordering Mr. Quinonez removed to Mexico, and also the warrant of removal showing his actual physical removal to the country of Mexico. The government submits that, looking at the totality of the evidence in this case, all five categories of evidence, that it is clear from the record that there was sufficient evidence to withstand this Rule 29, that a rational trier of facts could have found that, and indeed did find, that the defendant was in fact a citizen of Mexico. Turning now to the question of the plus-16 enhancement for the robbery conviction. As this Court is well aware, there is case law in this circuit, which we ask this Court to follow, that has already held that California Penal Code Section 211 is categorically a crime of violence. Now, the unpublished decisions from last year, there were four that we cited, two were in the Section 1326 context and applied it specifically to Section 201.2, which is the guideline at issue here. Those cases both found that this same identical California statute that Mr. Quinonez was convicted of, that Section 211 of the California Penal Code, they both found that that is categorically a crime of violence, both of those panels. In this case, of course, this case law, of course, goes back to McDoherty. And in McDoherty, of course, the Court held that California robbery conviction was a crime of violence under the career offender guideline. We submit that the analysis should be the same in this case, that the claim language of the guidelines, which expressly enumerate robbery as a crime of violence, along with this Court's prior case law, all support our position that this is categorically a crime of violence under a Taylor analysis. And therefore, we submit that these redundant decisions stand by the 60-level sentence analysis as appropriate. And therefore, we submit that the defendant's, the appellant's conviction was found by a jury properly with sufficient evidence to withstand the Rule 29 motion, and also that the robbery conviction was properly applied by the district judge based on this Court's prior case law and the expressed language of the guidelines. And if there are no questions, we would submit on that. Thank you very much. Ms. Lopez, you get the last word. I'll be addressing the crime of violence in Luzerno as having questions regarding the first issue. I'd just like to briefly state that there are several cases in the circuit in which it's found robbery to be a crime of violence, but each of those cases cite McDoherty. And it's implied that because it was found to be a crime of violence under 4B1.2, it's also a crime of violence under 2B1, 2L1.2. But Beltran-Mugia makes clear that it doesn't carry the same definition. And it states that although several cases, including Pereira, Salmeron, and Grand Blas, may be interpreted to say that the definition of crime of violence under 4B1.2 carries on to 2L1.2, that's not the case. That's not what they're saying. What they're simply saying is that, like in this case, robbery is also a per se crime of violence under Chapter 4, as it is in 2L1.2. So we have to take it a step further. It's not sufficient under 2L1.2 that there may be an inherent or a potential harm on the person. It's much broader than that. It allows for danger on a property. And as I indicated before, most states don't find that sufficient, and thus it does not meet the generic definition of crime of violence. Thank you, Your Honor. Thank you very much, Ms. Lopez. Thank you very much as well. 0750280, United States v. Reyes-Lopez is submitted at this time.
judges: Hall, Nelson, Silverman